UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA

              -against-           **MEMORANDUM & ORDER**
                                           20-CR-416(EK)

TERIQUE HINES,

              Defendant.

------------------------------------x
ERIC KOMITEE, United States District Judge:

At his April 2021 sentencing for violating the felon-in-possession statute, Terique Hines received two concurrent terms of supervised release.  *See* ECF No. 26.  Hines began the supervised release terms on September 23, 2022.

Hines was subsequently charged with violating the terms of his release three times: twice in an initial Violation of Supervised Release (VOSR) Report filed in January 2023, ECF No. 32, and once more in a Supplemental VOSR Report in March 2023, ECF No. 43.  The first report alleged the commission of two additional crimes while on supervised release: assault with intent to cause physical injury with a weapon, in violation of New York law, and theft (of a mattress), in violation of New Jersey law.  The third violation alleges leaving this District without the permission of the Court or Probation Department.  I held a revocation hearing on all three charges; that hearing spanned two days.

For the following reasons, the government has
established Hines' guilt on all three charges.  His supervised
release is revoked in light of that determination.

## I.  Discussion

"The power of the court to revoke a term of supervised
release for violation of a condition of supervised release . . .
extends beyond the expiration of the term of supervised release
for any period reasonably necessary for the adjudication of
matters arising before its expiration if," as here, "before its
expiration, a warrant or summons has been issued on the basis of
an allegation of such a violation."  18 U.S.C. § 3583(i); *see*
ECF Nos. 35, 46 (summonses issued January 24, 2023 and March 16,
2023, during Hines' supervised release).

The Government bears the burden of proving by a
preponderance of the evidence that the defendant violated a
condition of supervised release.  18 U.S.C. § 3583(e)(3).
"Neither the Federal Rules of Evidence nor the Sixth Amendment's
Confrontation Clause apply with full force in a revocation
proceeding," and out-of-court statements "may be admitted in
probation revocation hearings if [they] bear[] sufficient

indicia of reliability." *United States v. Diaz*, 986 F.3d 202, 209–10 (2d Cir. 2021).[1]

Based on the parties' submissions and the evidence presented, including the Court's assessment of the witnesses' credibility, the Government has met its burden as to all three charges.

## A.   Charge One: Assault

Charge One of the initial VOSR Report charged Hines with committing assault with intent to cause physical injury with a weapon, which is a second-degree felony under N.Y. Penal Law § 120.05(2).  This conduct, if proved, would thus violate the condition that he not commit another federal, state, or local crime.  VOSR Report 5-6.  The government charged, specifically, that on September 23, 2023, after Hines was denied access to a backstage area at the Rolling Loud music festival in Queens, New York, he struck a security guard — Deshawn Harris — with a glass bottle.  Gov't Post-Hr'g Br. ("Gov't Br.") 2.

Hines attended Rolling Loud as part of the entourage of Fivio Foreign, a performer at the festival.  *Id.* at 4.  Shortly before Mr. Foreign took the stage for a guest appearance with a headline performer, members of Foreign's entourage,

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

including Hines, assembled at a backstage area.  *Id.*  However, event security denied certain members of Foreign's entourage, including Hines, entry to the backstage area because they did not have the requisite credentials.  *Id.*  As one witness attested, this confrontation "escalated" and "a scuffle broke out."  Hr'g Day 1 Tr. 16:2–4, ECF No. 61; *accord* Hr'g Day 2 Tr. 11:8–12:2, ECF No. 67.

The government called Nicholas Olson, a security director for the event, to testify at the hearing.  Olson stated that he saw Hines "had a glass bottle, and then swung it, [and] hit Deshawn in the head."  Hr'g Day 1 Tr. 16:3-4, 17:5.  Olson described the bottle as "a squared off tequila bottle."  *Id.* at 18:15-17.  Olson described himself as being in very close proximity to these events as they unfolded, standing "about a foot to Mr. Harris' left side."  *Id.* at 15:13-14.  He testified that Hines did not act in self-defense: specifically, that no one hit Hines prior to him swinging the bottle at Harris.  *Id.* at 20:3-5.

Olson also testified that, sometime after this, he watched Dior Francis, who had accompanied Hines and Fivio Foreign, seek out and hit Harris in the head with a bottle a second time.  *Id.* at 21:7-14, 59:15-18, 70:16-23 ("after everything was done").  Olson indicated that Hines was not present for this second blow.  *See id.* at 70:12-15.

4

Notwithstanding the defense's efforts at impeachment, Olson's testimony was overwhelmingly consistent with the contemporaneous statements he made to police officers at the scene.  The government introduced NYPD body-camera video recordings of Olson taken shortly after the alleged altercation. Gov't Ex. 2 (0:00:03-0:00:36); Gov't Ex. 3 (0:02:52-0:04:36). In these videos, Olson can be heard giving the following statements about the "big" (or "bigger") "guy" and the "little guy" (whom Olson identified at the hearing as Hines and Francis, respectively):

- "The bigger guy had the bottle originally . . . and that little guy took it and then [made] the second hit."

- "They were just telling him he couldn't come in, he didn't have the proper credentials.  He was like, 'you don't know who I am.'  Started talking trash. . . .  Then all of a sudden [he] smacked him with the bottle."

- "He's hit two people with a bottle."

- "The big guy . . . was the original one holding the bottle and swung first."

*Id.*; *see, e.g.*, Hr'g Tr. 33:24-34:4.  Olson also added that Harris "didn't get cut up" when Hines struck him.  *See* Gov't Ex. 3 (0:02:52-0:04:36).

These recorded statements bear more than sufficient indicia of reliability to be relied on here.  They were captured on video, so we know the precise content of Olson's prior statements.  And the accuracy of those statements is supported

5

by their status as excited utterances *and* their consistency with Olson's testimony in this case. *See Diaz*, 986 F.3d at 210 (admitting VOSR hearing witness's out-of-court statements that were "corroborated by other evidence").

To challenge Olson's account, Hines elicited testimony that it was dark during the incident and that no glass was recovered from the scene. *Id.* at 39:19-20 (Olson's testimony); 101:14-18 (testimony of NYPD Officer Jonathan Cabrera).[2]  The defense also called Dequan Adams, a photographer who testified to witnessing part of the altercation.  Adams testified that for the portion of it he saw, Hines had no bottle – indeed, he saw no bottle "in that whole area."  Hr'g Day 2 Tr. 16:16-22. However, Adams' testimony was notably limited.  He said he did not see Hines hit any security guard at all.  *Id.* at 14:22-24. He also denied seeing any "later altercations" between the security guards and Hines or Francis.  *Id.* at 14:22-24.  And he expressly testified that, before the end of the scuffle, he "went back" to the stage to which Hines and Francis were seeking entrance, so he could take photographs from the stage.  *Id.* at 40:9-13, 41:3-6.

---

[2] *But see id.* at 17:12-15 (Security Director Olson testified that Hines struck Watson in a fire lane, and that there were "several . . . lighting towers" in the vicinity, as well as some lighting from the stage setup nearby); *see also id.* at 17:19-21 (Olson was "within a foot and a half" of the assault when it happened, and the "lighting conditions weren't that poor, I could see clearly").

On this record, the government has demonstrated by a preponderance of the evidence that Hines swung a glass bottle, intending to hit Harris, and that he indeed struck him.  Olson's eyewitness testimony was credible and largely corroborated by his contemporaneous statements to police.  Moreover, Adams' testimony does not rebut Olson's testimony because Adams testified to having seen only part of the events before he had to return to the stage, and specifically indicated that he did not see Hines or Francis strike Harris.  *See* Hr'g Day 2 Tr. 14:22-24, 46:6-10.

However, I do not find that Hines caused Harris' injuries.  Olson stated in his report to the police that Harris "didn't get cut up" from Hines' attack with the bottle.  Gov't Ex. 3 (0:02:52-0:04:36).

Based on these findings, Hines violated the terms of his supervised release.  "[A] defendant violates a condition of his supervised release pursuant to 18 U.S.C. § 3583(d) if his conduct constitutes any one or more of a federal crime, a state crime, or a local crime, whether or not that crime is ever prosecuted." *United States v. Francis*, 77 F.4th 66, 73 (2d Cir. 2023).  The government must prove each element of such crime by a preponderance.  *See United States v. Carlton*, 442 F.3d 802, 810-12 (2d Cir. 2006).  Physical injury is an element of assault with intent to cause physical injury with a weapon.  N.Y. Penal

Law § 120.05(2).  But the *attempt* to commit that crime does not require the government to prove physical injury.  *See In re Marcel F.*, 650 N.Y.S.2d 274, 275 (N.Y. App. Div. 2d Dep't 1996). New York courts have specifically recognized that an attack that misses, or fails to inflict physical injury, can still be an attempted assault: "[t]he mere fortuity that a physical injury was not inflicted is no defense" to attempted assault.  *Id.; see also Matter of Carlton P.*, 533 N.Y.S.2d 121, 122 (N.Y. App. Div. 2d Dep't 1988).

Under New York law, "attempt" is a lesser included offense of any substantive offense that can be attempted.  *See* N.Y. Crim. Proc. Law § 1.20(37) ("In any case in which it is legally possible to attempt to commit a crime, an attempt to commit such crime constitutes a lesser included offense . . . ."); *see generally Ljutica v. Holder*, 588 F.3d 119, 125 (2d Cir. 2009) ("[A]n attempt to commit a substantive crime is a lesser included offense of that substantive crime . . . .").

Given the lesser-included offense status, Hines cannot complain that the VOSR charge, which did not mention attempt, provided inadequate notice of this charge.  The Second Circuit has held that a VOSR defendant charged with violating the no-further-crime condition by committing a New York law offense has adequate "notice" of having violated the condition through not

only the stated offense, but also lesser included New York law
offenses. *See United States v. Parker*, 840 F. App'x 654, 656
(2d Cir. 2021).

The government has demonstrated by a preponderance of
the evidence that Hines attempted to assault Watson with intent
to cause physical injury under Section 120.05. That is, Hines
attempted: (1) with intent to cause physical injury to another
person, (2) to cause such injury to that person or a third
person, (3) by means of a deadly weapon or dangerous instrument.
N.Y. Penal Law § 120.05(2). "Physical injury" means impairment
of a physical condition or substantial pain. *Id.* § 10.00(9).
"Substantial pain" must be "more than slight or trivial pain."
*People v. Chiddick*, 8 N.Y.3d 445, 447 (N.Y. 2007). "Petty
slaps, shoves, kicks and the like delivered out of hostility,
meanness and similar motives are insufficient." *United States
v. Graves*, 466 F. App'x 56, 57 (2d Cir. 2012) (citing *People v.
Henderson*, 708 N.E.2d 165, 166 (N.Y. 1999)).

Under New York's penal law, "[a] person is guilty of
an attempt to commit a crime when, with intent to commit a
crime, he engages in conduct which tends to effect the
commission of such crime." N.Y. Penal Law § 110.00. The "tends
to effect" prong of attempt requires that the defendant's
conduct come "very near" or "dangerously near" to "the

accomplishment of the intended crime." *People v. Mahboubian*, 543 N.E.2d 34, 42 (N.Y. 1989).

Here, the government has shown by a preponderance of the evidence that Hines swung a glass bottle toward Harris' head (at the least).  Hines thus intentionally came dangerously near to inflicting physical injury with a weapon.  New York courts recognize that "the intent to cause physical injury can be inferred from the [defendant's] actions of [violence]." *Marcel F.*, 650 N.Y.S. at 275.  That inference is warranted here.

Additionally, a glass bottle used to hit someone constitutes a "dangerous instrument." *See, e.g.*, *People v. Jones*, 962 N.Y.S.2d 524, 526 (N.Y. App. Div. 4th Dep't 2013) (vodka bottle constituted a dangerous weapon where it was used to strike a victim in the head); *People v. Joseph*, 802 N.Y.S.2d 685, 685 (N.Y. App. Div. 1st Dep't 2005) (affirming assault conviction where "there was no reasonable view of the evidence that the victim's injuries were caused by something other than being struck by a bottle, or that the bottle was not a dangerous instrument").

Where the elements of assault — aside from injury — are established, "the mere fortuity that a physical injury was not inflicted is no defense" to an attempt charge. *Marcel F.*, 650 N.Y.S.2d at 275.  For example, in *Marcel F.*, the court held that "throwing two punches in the direction of [a] police

10

officer's face" amounted to attempted assault, even though "the officer managed to avoid physical injury," because the defendant's actions allowed the "finding that [he] attempted to inflict such injury" but failed.  *Id.*  Likewise, here, Hines' swinging a glass bottle at Harris' head, even assuming he did not cause Harris physical injury, amounts to attempted assault, in violation of Hines' no-further-crimes condition.[3]

For these reasons, Hines is guilty of Charge One.

**B.   Charge Two: Theft**

Charge Two of the Supplemental VOSR Report charges Hines with committing the crime of theft by shoplifting a mattress in Union, New Jersey, in violation of the condition of his supervision that he not commit another federal, state, or local crime.  Supp. VOSR Report 1.

Hines pled guilty to shoplifting an item worth less than $200, a disorderly person offense under New Jersey law. Gov't Ex. 5 at 1; *see* N.J.S.A. § 2C:20-11(c)(4).  He does not deny that he shoplifted a mattress.  Hr'g Day 1 Tr. 102:20-103:5

---

[3] The government argues that Hines is also liable as an accessory to Francis' later attack.  *See* Gov't Br. 15 (citing N.Y. Penal Law § 20.00). But the government has not proved by a preponderance of the evidence that Hines acted in concert with Francis when Francis delivered the second blow. Olson confirmed at the hearing that the second blow took place "after everything was done," and indicated that Hines was no longer present, and indeed had been detained elsewhere.  *See* Hr'g Day 1 Tr. 29:11-13, 59:15-18, 70:12-15; *cf. People v. Baugh*, 956 N.Y.S.2d 313, 316 (N.Y. App. Div. 3d Dep't 2012) (approving accessory liability for a defendant who "*at that moment*, was part of the group that attacked the victim" but did not deal the critical blow (emphasis added)).

(THE COURT: "I don't think we have any serious dispute about his commission of the shoplifting offense . . ."; MS. EISNER-GRYNBERG: "That is accurate.").  His sole defense is that this constituted not a "crime" but a "disorderly person offense," and thus did not violate the no-further-crimes condition.  *See* Def.'s Letter 17, ECF No. 71.

But a defendant violates the no-further-crimes condition if his conduct satisfies the elements of a state or local crime, "whether or not that crime is ever prosecuted." *Francis*, 77 F.4th at 73.  This is the case here: shoplifting an item valued over $500 and under $75,000 in New Jersey is a "crime of the third degree."  N.J.S.A. § 2C:20-11(c)(2).  The only direct evidence of the valuation of the mattress is $799. *See* Gov't Ex. 8 (a "Citizen's Report" of the shoplifting, identifying the mattress brand and specifying a retail price of $799).  The government has thus shown by a preponderance of the evidence that Hines committed criminal shoplifting — the (c)(2) offense — even though it was not prosecuted by New Jersey authorities as such.  Accordingly, Hines is guilty of Charge Two.

C.   **Charge Three: Unauthorized Travel to New Jersey**

Charge Three of the Supplemental VOSR Report charges Hines with violating the conditions of his supervised release by leaving the Eastern District of New York, his district of

12

supervision, for New Jersey, without prior permission from the Court or a probation officer.  Supp. VOSR Report 2.  Hines does not contest that he traveled to New Jersey without permission, and the record demonstrates that he pled guilty to a disorderly person offense in New Jersey.  Gov't Ex. 5 at 1.  He is guilty of Charge Three.

## V.  Conclusion

For the foregoing reasons, Hines' supervised release is revoked.


SO ORDERED.


                                   /s/ Eric Komitee
                                   ERIC KOMITEE
                                   United States District Judge


Dated:    December 4, 2023
          Brooklyn, New York